IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **LISA CASH,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 14-325** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND**

Lisa Cash ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of

a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner")

denying her applications for disability insurance benefits ("DIB") and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act.   Before the Court are

Plaintiff's Motion for Summary Judgment or Alternative Motion for Remand (ECF No. 11) and

Defendant's Motion for Summary Judgment (ECF No. 13).[1]   Plaintiff contends that the

administrative record does not contain substantial evidence to support the Commissioner's

decision that she is not disabled.   No hearing is necessary.   L.R. 105.6.   For the reasons that

follow, Plaintiff's Alternative Motion for Remand (ECF No. 11) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).   For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable."   *Id.*

# I

## Background

Plaintiff was born in 1964, has a college education, and previously worked as a program director/account manager, public health analyst, project manager/senior research analyst, consultant, and director of research and education. R. at 25, 214. Plaintiff applied for DIB protectively on September 8, 2011, and for SSI on September 10, 2011, alleging disability beginning on May 24, 2011, due to lumbar and cervical spinal stenosis, lumbar degenerative disc disease, and facet arthritis. R. at 17, 179-89, 213. The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 56-111. On June 18, 2013, ALJ Eugene Bond held a hearing at which Plaintiff *pro se* and a vocational expert ("VE") testified. R. at 32-55. On July 25, 2013, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of May 24, 2011, through the date of the decision. R. at 14-31. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on December 5, 2013. R. at 1-13. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On February 2, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

**II**

**Summary of Evidence**

**A.    Opinion Evidence**

The ALJ noted in his decision:

> In September 2011, [Plaintiff] was involved in a motor vehicle accident where she injured her right forearm.  [Plaintiff] complained of right forearm burning and pain.  [Plaintiff] was the driver of the vehicle, and there was front impact and the air bags deployed.  She reported that she had pain in her neck, arms to her shoulder blades, low back, and legs to her buttocks.  Lumbosacral spine films noted spondylolisthesis at the L4-5 level, Degenerative [sic] disc disease was seen at L5-S1 and facet degenerative changes were noted in the low lumbar spine as well.  [Plaintiff] was diagnosed with cervical and lumbosacral spine strains superimposed upon her chronic cervical and lumbosacral pain.

R. at 23 (citations omitted); *see* R. at 341, 346, 357, 359-60.

The ALJ also noted:

> In November 2011, [Plaintiff] reported that she was still getting neck pain, at least 4/10, and 3/10 with medications.  [An] MRI of the thoracic pain [sic] revealed mild upper thoracic disk bulging.  Surgery was recommended to [Plaintiff] in December 2011.  In January 2013, [Plaintiff] underwent L4-5 laminectomy and posterior fusion extending from L3 to S1.

R. at 23 (citations omitted); *see* R. at 373, 441, 470.

As the ALJ also noted in his decision, on May 15, 2012, Plaintiff's treating physician,

Birgitta Miller, M.D.,

> noted that [Plaintiff] was diagnosed with back pain with radiation to left leg since 2004.  [Dr. Miller] opined that [Plaintiff] could stand for 5-45 minutes and walk for 10 yards.  [Dr. Miller] opined that [Plaintiff] could lift 5 pounds frequently, 10 pounds occasionally.  [Dr. Miller] opined that [Plaintiff] could not climb ladders, or crawl up stairs.  [Dr. Miller] opined that [Plaintiff's] prognosis for improvement was fair, and that her aging would likely exacerbate chronic conditions.

R. at 23 (citations and footnote omitted); *see* R. at 446.

> In August 2011, Dr. Babak Arvanaghi, [Plaintiff's] treating physician, opined that [Plaintiff] was disabled by her condition, which restricts her activities

3

and provides limitations to her abilities.  He opined that these limitations were permanent, and precluded her from engaging in any gainful employment opportunities.  In December 2012, Dr. Babak Arvanaghi[] opined that [Plaintiff] has become disabled by her condition, which restricts her activities and provides permanent limitations in her abilities that preclude her from engaging in any gainful employment opportunities.  He noted that these limitations and her level of have [sic] increased since a September 2011 car accident.  He opined that based on the underlying cause of [Plaintiff's] condition is [sic] degenerative disc disease, her condition will only continue to worsen over time.

R. at 23-24 (citations omitted); *see* R. at 460, 494.

On December 19, 2011, a state agency medical consultant, E. Nakhuda, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 62-63, 70-71.  Dr. Nakhuda opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 62, 70. Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 63, 71.  Plaintiff had no manipulative, visual, communicative, or environmental limitations.  R. at 63, 71.  On July 17, 2012, Gurcharan Singh, M.D., another state agency consultant, affirmed Dr. Nakhuda's opinion.  R. at 82-83, 92-93.

In May 2013, Dr. Arvanaghi noted that

[Plaintiff] recently underwent two surgical treatments.  In January 2013, an anterior cervical discectomy and fusion was [sic] performed to decompress her spinal cord at the C3-4 level.  This was followed in March 2013 by a posterior laminectomy and instrumentation fusion from L3-S1 to treat radiculopathy from her lumbar spine that was causing intolerable pain in her legs.  Since the surgeries, the leg pain has been completely relieved; however, the chronic low back pain persists.  In addition, [Plaintiff] continues to have pain in the neck and shoulders which radiates into the right arm.

R. at 492.

**B.**     **Plaintiff's Testimony**

At the hearing, Plaintiff read her opening statement:

Since my neck fusion on January 16, 2013, I now have more muscle tension and spasms on the back sides of my neck and across the top of my shoulders, and I've been having more migraine headaches, about one per week. When I get one I feel nauseous and I'm sensitive to light and noise. If I can take my medication within the first 30 minutes of a migraine coming on, within about two hours I get relief. Otherwise I have to take a second dose and wait another one to two hours before I'm able to resume any activity.

Since the first surgery, I've also had a constant feeling of a pinched nerve in my right shoulder and arm, and my right hand is sometimes weak and unable to write, hold cooking utensils firmly or open jars or medicine bottles. Five months after the surgery, it is still painful for me to turn my neck past a certain point from left to right, so I turn my torso to be able to see when driving or to be able to check for oncoming traffic when crossing the street. My vocal [cords] are also still weak, and it is tiresome for me to talk at times, and I often struggle to speak loud enough to be easily heard.

Since the lumbar fusion on 3/1/13, the radiating pain down the back of my legs that had become so debilitating has been relieved. However, I continue to have constant low back pain and have more muscle spasms in my back. I also now have the constant feeling of pins and needles in my very lower back, buttocks and hips that I did not have before the surgery.

. . . .

Since the two hardware fusion surgeries, the resulting decreased range of motion has made it more difficult and painful for me to move—to get out of bed, to bathe, to comb my hair, to get dressed, to go up and down stairs, to get in and out of chairs, to cook, to reach for things overhead, to bend down, to get in and out of cars, to walk. Anything that requires me to move my body hurts, so I move very slowly now.

It is also more difficult for me to be upright standing or walking because of the added pressure it puts on my low back and hips. Even when I'm being still—leaning against a counter, sitting in a chair or lying down on the couch or bed—I still hurt and cannot stay in one position for very long.

. . . .

If I'm just having a bad day physically I limit my activity by cutting out some ADLs and trying to move as little as possible. Once my pain level reaches a six out of ten, if I do not start taking the Norco and Soma I will not be able to get

a handle on the pain and will not be able to get it back down to something that I can tolerate comfortably.

In addition, the Neurontin makes it more difficult for me to read, and all three of these medications make it difficult for me to concentrate and think clearly.  The other medication I am on regularly is Valium, which I take only at bedtime.  Without it, I am unable to sleep through the night because of the pain.

Since the surgeries, my priorities in terms of my activities have been narrowed down to being able to take care of personal hygiene on a daily basis, to prepare at least two meals per day for myself and my children and to keep up with the laundry and grocery shopping on a weekly basis.  I spend my days trying to do these things and in physical therapy or working on my home exercises to improve my function.

There are five to six other levels in my neck and back that are badly degenerated and that my doctors have advised will need to be surgically treated to prevent permanent functional deficits.  However, because I am a single parent of relatively young children, the logistics of the surgery and recovery time are just not manageable, so my hope is to delay additional surgery for [as] long as possible.

R. at 36-39.

Plaintiff also testified that she last worked as a project manager and account manager for a Fortune 100 company in its research department, but was laid off because of budget cuts.  R. at 40-41.  When driving an automobile, she cannot turn her neck to see, so she turns her body to do so.  R. at 41.  She also stated that her medications prevented her from driving, but there were no restrictions on her driver's license.  R. at 41.  Plaintiff cooked at home, but her family and friends helped with housecleaning, and she shopped for groceries with her children.  R. at 41-42.  In the mornings, she prepared breakfast for her children if she felt up to it, and she did her stretching exercises.  R. at 42.  Plaintiff attended physical therapy every other day or exercised at home, and she took her children to and from their activities while she was completing her degree.  R. at 42.  During her physical therapy sessions that lasted about two and half hours, Plaintiff spent

fifteen minutes on an elliptical bicycle and performed squats and exercises to strengthen her legs, back, and arms.  R. at 42-43.

Plaintiff testified that, in addition to physical therapy, she attended church and visited her family.  R. at 44.  She walked with a cane regardless of the distance traveled.  R. at 44.  Her medication for her back pain "will help to bring [her] pain level back down to [her] baseline level of pain which [she] can tolerate without medication, which is about a four out of ten."  R. at 44-45.  Her medication for her neck pain "helps to some extent," but the "pinched nerve feeling" in her neck, shoulder, and arm "is not relieved by any medication."  R. at 45.  Because of her surgeries, she cannot take any anti-inflammatory medication for arthritis.  R. at 45.  Her migraine headaches are "debilitating for at least a couple of hours, depending on how soon [she is] able to treat them," but admitted that her medication that she took once a week helped.  R. at 46.

In her function report completed in October 2011, Plaintiff reported that she could lift up to 30 pounds while sitting down with her back supported or 20 pounds while standing and bending her knees to lift.  R. at 248.  On a "good day" she could stand for 30 minutes, but only five to ten minutes on a "bad day."  R. at 248.  Plaintiff reported that reaching overhead was painful.  R. at 248.  Plaintiff also reported:

> On a good day I can walk for maybe 30-40 minutes without a cane if I take frequent breaks.  On a bad day I have difficulty walking at all without a cane and even then still have to take frequent breaks. . . . I can sit for maybe 10-15 minutes without needing to change positions.  On a bad day, sitting for even 5 minutes is painful and I spend most of my time laying [sic] down.  I avoid climbing stairs, but can climb maybe up to 15 stairs without a break if I have to.  On bad days, I go up the 13 stairs in my house on my hands and knees to minimize the pain.  When I experience numbness or tingling in my hands, I have a difficult time holding things—toothbrush, hairbrush, curling iron, cooking utensils, pen.

R. at 248.

**C.      VE Testimony**

The ALJ asked the VE at the hearing whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC as outlined below in Part III. R. at 48-49. The VE testified that, given all of these factors, the individual would be able to perform unskilled, light[2] occupations such as office helper, mail room clerk, and unarmed security guard. R. at 49. The VE's testimony about a sit-stand option is based on his experience and not on the *Dictionary of Occupational Titles*.[3] R. at 50. An individual whose limitations due to pain and side effects of medication limited performance to less than 80% of an employer's requirements would not be able to perform any work. R. at 50-52.

**III**

**Summary of ALJ's Decision**

On July 25, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of May 24, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy. R. at 19-27. The ALJ thus found that she was not disabled from May 24, 2011, through the date of the decision. R. at 27.

In so finding, the ALJ found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must have a sit-stand option at will. [Plaintiff] frequently has a requirement for hand-held medically assistive devices namely a cane, which is needed for standing, walking, and balancing. [Plaintiff] can engage in occasional reaching, handling, fingering and feeling with the right hand. She has the ability to understand, remember, and carry out instructions, which are for simple, routine and repetitive tasks. She has the ability to frequently interact with supervisors, co-workers, and the general public. She has the ability to frequently make simple decisions. She has the ability to deal with changes in a routine work setting in which the changes are simple work-related decisions. She has the ability to perform work that does not require satisfaction of a production pace. She has the ability to perform work at low stress by avoiding changes generally.

R. at 21.

The ALJ considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. at 21.

> While the evidence of record demonstrated that [Plaintiff] has sustained limitations from . . . Disorders of the Back and Arthritis, the record does not corroborate [Plaintiff's] allegations of totally disabling physical symptoms and its [sic] accompanying limitations. The undersigned notes that [Plaintiff's] allegations about [her] symptoms and limitations are only partially credible, largely due to the lack of objective medical evidence, treatment history, and inconsistent statements.

> These facts in the record do not dispute that [Plaintiff] has conditions, which singly or in combination, may cause [her] limitations. What these pieces of evidence suggest is that [Plaintiff's] symptoms may not be accurately reported, may not exist at the level of severity assumed by [Plaintiff's] testimony at [the] hearing and may have other mitigating factors against their negative impact on [Plaintiff's] ability to engage in work activity. The above [RFC], as determined by the undersigned, gives adequate weight to as [sic] determined credible.

R. at 21-22.

> As for the weight given to the opinion evidence, the ALJ found that
>
> [Plaintiff's] treating physician opinion regarding [Plaintiff's] physical limitations has not been provided substantial or controlling weight because it is based primarily on [Plaintiff's] subjective allegations and is not supported by her objective findings nor those of any other medical source.  The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported.  Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Plaintiff's] subjective complaints.  His opinion is not supported by his objective findings or by those of any other treating or examining medical source.  Therefore, it is given no weight.

R. at 24.  The ALJ gave "substantial weight" to the opinions of the state agency consultants to the extent that they were consistent with the ALJ's RFC assessment that Plaintiff was not disabled.  R. at 24.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

regardless of age, education, and work experience.   20 C.F.R.   §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R.   §§ 404.1520(a)(4)(iv),   404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.   *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.   *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not

disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will

find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct

legal standards and whether the factual findings are supported by substantial evidence.  *See*

*Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is

not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the

relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42

U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not

conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.

1986), or undertake to reweigh conflicting evidence, make credibility determinations, or

substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he

duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v.*

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

VI

**Discussion**

**A.     ALJ's Duty to Develop Record**

Plaintiff contends that the ALJ failed to develop properly the administrative record by failing to obtain pertinent medical records.  Pl.'s Mem. Supp. Mot. Summ. J. 3-5, ECF No. 11-1. Plaintiff maintains that

> [t]he administrative record does not contain the hospitalization records from [her] surgeries, the operative reports, or any documentation from any of [her] treating health care providers regarding her post-surgical condition.  Moreover, the [ALJ] failed to discuss or evaluate the evidence that [she] had had two major surgical procedures in the six months prior to her administrative hearing.
>
> In failing to obtain records from [her] treating health care providers regarding [her] surgical procedures and post-surgical status, the [ALJ] has failed in his duty to develop the administrative record, and to scrupulously and conscientiously probe into, inquire of, and explore for the relevant facts.

*Id.* at 5.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate."  *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  "Although [Plaintiff] was not represented by counsel, this is not in itself reason to upset the [Commissioner's] decision, for the [Commissioner] has no duty to insist that [Plaintiff] have counsel."  *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).  "[I]n pro se cases, Administrative Law Judges have a duty to assume a more active role in helping claimants develop the record." *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *see Craig*, 76 F.3d at 591; *Fleming v. Barnhart*,

14

284 F. Supp. 2d 256, 272-73 (D. Md. 2003).  On the other hand, "the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994); *see Lehman v. Astrue*, 931 F. Supp. 2d 682, 693 (D. Md. 2013).  In cases where the claimant is not represented by counsel, "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh*, 632 F.2d at 300.

Here, Plaintiff has neither argued nor shown prejudice warranting remand.  Plaintiff stated at the hearing that she had been informed that the Social Security Administration had all the information she had submitted, although she did not review before the hearing the exhibits in her file, and that she did not object to the exhibits. R. at 35.  The ALJ also accepted Plaintiff's submission of her records from her physical therapist, surgeon, and pain management doctor.  R. at 39.  Plaintiff presented testimony at the hearing of her functional status after her surgeries in January and March 2013.  R. at 35-39.  At the conclusion of the hearing, the ALJ kept the record open for a month for Plaintiff to submit additional evidence.  R. at 52-54.

Although Plaintiff complains that the ALJ "failed to discuss or evaluate the evidence that [she] had had two major surgical procedures in the six months prior to her administrative hearing," Pl.'s Mem. Supp. Mot. Summ. J. 5, ECF No. 11-1, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).  "The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word." *Id.*  The ALJ did note in his decision that Plaintiff underwent a laminectomy and posterior fusion in January 2013.  R. at 23 (citing R. at 470).  The record also

contains MRI findings after Plaintiff's surgeries (R. at 469-70, 473-74) and shows that Plaintiff's surgeries in 2013 relieved her leg pain but not her low back pain (R. at 492).  Even if the ALJ had erred "[i]n failing to obtain records from the Plaintiff's treating health care providers regarding [her] surgical procedures and post-surgical status," Pl.'s Mem. Supp. Mot. Summ. J. 5, ECF No. 11-1, Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of [her] disability claim."  *Reid*, 769 F.3d at 865; *see Boyd v. Astrue*, Civil Action No. BPG-09-0150, 2010 WL 3369362, at *4 (D. Md. Aug. 23, 2010) ("[O]n review, a district court considers not whether the medical record before the ALJ was exhaustive, but whether the record was complete enough to allow the ALJ to make all necessary determinations based upon substantial evidence, and whether any gaps in the record led to unfairness or prejudice for the claimant."); 20 C.F.R. §§ 404.1513(e), 416.913(e). In any event, there is no indication that Plaintiff "has ever tried to obtain the medical records [she] claims the ALJ should have obtained, which casts considerable doubt on the relevance of the evidence and existence of any prejudice [she] may have suffered from the ALJ's not obtaining it."  *Hanson v. Apfel*, 173 F.3d 863, No. 98-5127, 1999 WL 160821, at *2 (10th Cir. Mar. 24, 1999) (unpublished table decision) (citing *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997)).  Because Plaintiff does not show how any purported gaps in the record have led to unfairness or prejudice, her argument that the ALJ failed to develop the record is unavailing.

**B.      ALJ's RFC Assessment**

Plaintiff next contends that the ALJ erroneously assessed her RFC contrary to Social

Security Ruling 96-8p.[5]  Pl.'s Mem. Supp. Mot. Summ. J. 5-12, ECF No. 11-1 (citing, *inter alia*,

*Fleming*, 284 F. Supp. 2d at 271-72).  Plaintiff maintains that the ALJ failed to perform properly

a function-by-function assessment of her ability to perform the physical and mental demands of

work.  *Id.* at 8.  In particular, Plaintiff asserts that the ALJ

> did not evaluate [the state agency] physicians' opinions that [she] was only
> capable of standing and/or walking for two hours in an eight-hour workday, and
> did not include any postural limitations in his [RFC] assessment.  Moreover, he
> did not explain his determination that [she] required a sit/stand option, required a
> hand-held assistive device, was limited to no more than occasional reaching,
> handling, fingering, and feeling with her right hand, was limited to simple,
> routine, repetitive tasks, was capable of frequently interacting with coworkers,
> supervisors and the general public, could not satisfy production pace, and required
> low stress work.

*Id.* at 8-9.

The burden is on the party attacking an agency's determination to show that prejudice

resulted from the error, however.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696,

1705-06 (2009).  "Where harmfulness of the error is not apparent from the circumstances, the

party seeking reversal must explain how the error caused harm."  *McLeod v. Astrue*, 640 F.3d

881, 887 (9th Cir. 2011).  "[R]eversal is not required when the alleged error 'clearly had no

bearing on the procedure used or the substance of [the] decision reached.'"  *Ngarurih v. Ashcroft*,

371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United*

---

[5]  Social Security Rulings are "final opinions and orders and statements of policy and
interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).
Once published, these rulings are binding on all components of the Social Security
Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984);
20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to
deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204
n.3.

17

*States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964)).  Furthermore, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."  *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").  Rather, "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time."  *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.); *see Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam).

Plaintiff "provides no analysis of how a 'more detailed' assessment . . . might have resulted in a different outcome" or how the inclusion of the state agency consultants' exertional or postural limitations omitted from the ALJ's RFC assessment would have altered the outcome of the case.  *Seifert v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-1051, 2013 WL 1881065, at *2 (D. Md. May 2, 2013).  Plaintiff's contention in this regard thus is unavailing.

Plaintiff then maintains that the ALJ's "decision is based upon an inaccurate portrayal of the evidence."  Pl.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 11-1.  Plaintiff contends that the ALJ erroneously characterized the treatment for her impairments, including her lumbar and cervical fusions, as "routine and/or conservative in nature" (R. at 24).  Indeed, her lumbar and cervical fusions are not conservative measures.  *See, e.g.*, *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010); *Jones v. Heckler*, 702 F.2d 950, 951 (11th Cir. 1983); *Cuthrell v. Celebrezze*, 330 F.2d 48, 51 (4th Cir. 1964).  Moreover, as Plaintiff points out, the fact that she

was laid off from work in 2009 before her alleged onset date of disability of May 24, 2011, is irrelevant to her claim of disability.

Plaintiff maintains, however, that the ALJ inaccurately stated in his decision that the "treating physician opinion regarding [her] physical limitations has not been provided substantial or controlling weight because it is based primarily on [Plaintiff's] subjective allegations and is not supported by her objective findings nor those of any other medical source." R. at 24. She asserts that this statement "is a generality, with no citation to the actual evidence of record." Pl.'s Mem. Supp. Mot. Summ. J. 10, ECF No. 11-1.

"[A] treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)). "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so. *See Bishop*, 583 F. App'x at 67.

> Here, as noted in Part III above, the ALJ found that
>
> [Plaintiff's] treating physician opinion regarding [Plaintiff's] physical limitations has not been provided substantial or controlling weight because it is based primarily on [Plaintiff's] subjective allegations and is not supported by *her* objective findings nor those of any other medical source. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Plaintiff's] subjective complaints. *His* opinion is not supported by his objective findings or by those of any other treating or examining medical source. Therefore, it is given no weight.

R. at 24 (emphasis added).

The ALJ's reference to the treating physicians' opinions here confounds their analysis by the ALJ.  It is not clear here what the ALJ meant in his consideration of the treating physicians' opinions, as the ALJ mentioned neither Dr. Miller nor Dr. Arvanaghi by name here and even confused Dr. Miller's gender when referring in the decision previously to the doctor's medical source statement on May 15, 2012.  *Compare* R. at 23 *with* R. at 446-52.  The lack of clarity in this regard frustrates meaningful review by the Court.  *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("We cannot determine if findings are unsupported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence.").  The ALJ also provided no basis for his finding that (presumably) Dr. Miller's opinion primarily was based on Plaintiff's unquestioned self-reporting rather than on her clinical observations.

Remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or *where other inadequacies in the ALJ's analysis frustrate meaningful review*."  *Mascio v. Colvin*, __ F.3d __, No. 13-2088, 2015 WL 1219530, at *3 (4th Cir. Mar. 18, 2015) (emphasis added) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Because the Court "remain[s] uncertain as to what the ALJ intended," *id.* at *4, remand is warranted in this case.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 13) is

**DENIED**.   Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**.   Plaintiff's

Alternative Motion for Remand (ECF No. 11) is **GRANTED**.   A separate order shall issue.


Date: March 19, 2015                                     _____/s/_____
                                                                                 Thomas M. DiGirolamo
                                                                                 United States Magistrate Judge